IRVING, J.,
for the Court.
¶ 1. This case comes before this Court on appeal from the Youth Court of Lee County. It is brought by J.M.R., a minor, who was adjudged delinquent within the meaning of the Mississippi Youth Court Act and was committed to a state-supported training school. J.M.R. argues that the trial judge erroneously considered facts not brought forth in open court and abused his discretion in ordering J.M.R.’s commitment to training school.
¶ 2. We find no error in the trial judge’s order and affirm the youth court’s adjudication.
FACTS
¶ 3. J.M.R. was adjudged to be delinquent on October 5, 1999. The trial judge committed him to a state-supported training school but ordered that transportation to the training school be withheld. He then placed J.M.R. on supervised probation. J.M.R. was adjudged delinquent again on June 6, 2000, and he was transported to training school. He was later released and placed on supervised probation.
¶ 4. On February 26, 2001, a petition was filed alleging that J.M.R. violated his probation, committed burglary and petit larceny. J.M.R. admitted that he was guilty of all charges against him and was adjudged delinquent on March 8, 2001. On that same day, a disposition hearing was conducted and the trial judge found that there was no other reasonable alternative than training school and that the least restrictive alternative consistent with J.M.R.’s best interest was that he be placed in training school. The trial judge temporarily suspended transportation to training school because J.M.R. had a leg/ankle injury and was under the care of a local physician and physical therapist. The trial judge withheld transportation for two weeks so further documentation could be submitted on J.M.R.’s physical condition.
¶ 5. On April 5, 2001, at the review hearing to determine J.M.R.’s physical fitness to participate in training school programs, testimony was introduced that J.M.R. had attempted suicide and stolen prescription medication. Additional evidence was introduced where a counselor opined that J.M.R. suffered from clinical depression with suicidal ideation. J.M.R. was also deemed by the counselor to have *603 behavioral problems due to his depression including polysubstance abuse. The trial judge ordered that J.M.R. be examined to determine if he was a candidate for the children/adolescence division at a mental hospital. He was held at the detention center while he awaited psychological and psychiatric evaluations. Duly, transportation to training school was deferred to determine if J.M.R. came under the mentally ill commitment guidelines.
¶ 6. The trial judge held other review hearings to determine if J.M.R. was sufficiently able mentally and physically to be transported to training school. A final review hearing was held by the trial judge on May 21, 2001. At that time, evidence was introduced from mental health personnel recommending that J.M.R. be allowed to continue psychiatric treatment and not sent to training school. At the conclusion of this hearing, the trial judge authorized transportation of J.M.R. to training school.
ANALYSIS AND DISCUSSION OF THE ISSUE

Commitment to Training School

¶ 7. An appellate court’s review of youth court cases is limited. In the Interest of S.B., 566 So.2d 1276, 1278 (Miss.1990).
We consider all the evidence before the Youth Court in the light most favorable to the State. If the evidence so considered is opposed to the adjudication of the Youth Court with such force that reasonable men could not have found as the Youth Court did beyond a reasonable doubt, we must reverse. On the other hand, if there is substantial evidence in the record supporting the adjudication of the Youth Court, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, the Youth Court might reasonably have ruled as it did, we must affirm.

Id.

The standard of review by an appellate court in Mississippi is to grant great authority and wide discretion to the youth court in delinquency cases and disposition orders. In the Interest of T.D.B., 446 So.2d 598, 599 (Miss.1984).
¶ 8. J.M.R. contends that the trial judge improperly considered facts that were not a part of the record and therefore the court’s decision to commit him to training school was an abuse of discretion and constitutes reversible error. One argument J.M.R. makes to support his claim of error by the trial judge explains that the trial judge improperly considered facts that were brought forth during the proceedings held in open court on May 21, 2001. Specifically, J.M.R. cites to the trial judge’s mentioning that he had received phone calls from “people in the community” informing him that J.M.R.’s leg was not injured and that J.M.R. had been seen jumping on a trampoline.
¶ 9. The State argues in its brief that the issue raised by J.M.R. is moot because, according to the State, J.M.R. has already been to, and released from, the training school. However, it is not clear from the record when J.M.R. was transported to training school nor when, or if, he has been released. Consequently, we decline the State’s urging that no issue remains for our review. We address the issue on its merits.
¶ 10. We first note that J.M.R. does not quote the trial judge completely and misconstrues the trial judge’s statements. The trial judge specifically said that he gave greater weight and credibility to the doctor’s reports than he did to what the community was reporting back to him. To quote directly from the transcript, the trial *604 judge stated subsequently after remarking on the phone calls that “that is not what the doctor’s report said, so I took the doctor’s report more serious than I did what some of the neighborhood people were telling me about you.” Moreover, the trial judge affirmed at this hearing that he only delayed transportation because J.M.R. was injured and he was giving J.M.R. an opportunity to get some counseling. The trial judge repeatedly stated throughout the disposition hearing and review hearings that he did what he thought was in J.M.R.’s best interest and that he could not find any least restrictive alternative than commitment to training school.
¶ 11. As we have previously mentioned, our standard of review is to allow the youth court wide discretion. The second argument made in support of the issue J.M.R. raised explains that the trial judge’s commitment of J.M.R. to training school was an abuse of discretion. We disagree. There is substantial evidence in the record to support his order to commit J.M.R. to training school. On two prior occasions, J.M.R. had been adjudicated delinquent. Moreover, J.M.R. admitted to violating probation and committing the crimes of burglary and petit larceny. Other disposition alternatives had been utilized in the past with J.M.R., and the trial judge found commitment to training school was in J.M.R.’s best interest. J.M.R. maintains that the trial judge improperly considered community hearsay in the disposition hearing, but that is not evidenced in the record. The trial judge at the disposition hearing on March 8, 2001, committed J.M.R. to training school. Throughout the review hearings to determine J.M.R.’s physical and mental fitness to attend training school, the trial judge repeatedly affirmed that transportation to training school was being held in abeyance and that the order was not being vacated. We find nothing inappropriate about the trial judge’s statements made at the May 21, 2001 review hearing, but even if the comments were inappropriate, no prejudice attached. This Court finds that the trial judge did not err nor abuse his discretion in committing J.M.R. to training school. Therefore, we affirm the trial judge.
¶ 12. THE JUDGMENT OF THE YOUTH COURT OF LEE COUNTY ADJUDICATING J.M.R. TO BE DELINQUENT AND COMMITTING HIM TO A STATE-SUPPORTED TRAINING SCHOOL IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ„ CONCUR.